IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CR227 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| DANIEL RODGERS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion of defendant Daniel Rodgers (Rodgers) to suppress (Filing No. 23). Rodgers seeks to suppress evidence seized from a warrantless search of an automobile in which Rodgers was a passenger on October 3, 2003. Rodgers is charged in the Indictment with the possession of a firearm on October 3, 2003, after having been convicted of a felony in violation of 18 U.S.C. § 922(g).

An evidentiary hearing was held on the motion on March 8, 2005. At the hearing, the court heard testimony from Chief Deputy William R. Whitlow (Deputy Whitlow) of the Chase County Sheriff's Department (CCSD). The court also received into evidence a consent to search form (Exhibit 1) and affidavits of Deputy Whitlow (Exhibits 101 and 102). A transcript of the hearing (TR.) was prepared and filed on March 14, 2005 (Filing No. 32).

**FINDINGS OF FACT**

Around 9 o'clock in the evening of October 3, 2003, Deputy Whitlow was operating a stationary radar on the east end of the village of Juanita, Nebraska, when he clocked a 1983 Cadillac DeVille traveling 73 miles per hour in a 60 mile per hour zone (TR. 3-4; 29-30). Deputy Whitlow gave chase in his patrol car and stopped the Cadillac by activating his emergency lights when he caught up with the Cadillac (TR. 4). When the Cadillac pulled over and stopped, Deputy Whitlow made contact with the driver and requested a driver's license, vehicle registration, and insurance information (TR. 4). The driver handed Deputy Whitlow a driver's license identifying the driver as Andrew Blume (TR. 4). Blume stated that he had no

idea where the paperwork for the vehicle was as the vehicle belonged to the passenger who appeared to be sleeping in the front passenger seat (TR. 4-5). The Cadillac had a Colorado temporary tag in the back window (TR. 5). Blume said the passenger's name was Dan and Deputy Whitlow asked Blume to awaken the passenger (TR. 5). Blume yelled Dan's name and shook the passenger, but the passenger remained unresponsive (TR. 5). Deputy Whitlow had Blume get out of the Cadillac and stand at the rear of the Cadillac in front of the patrol car (TR. 34-35). Deputy Whitlow walked back to his patrol car with Blume's driver's license to run a check to see if the license was valid (TR. 6). The check came back indicating Blume's driver's license was valid (TR. 6; 35). Deputy Whitlow told Blume that a speeding citation would be issued but that Deputy Whitlow needed to have Blume find some documentation for the vehicle (TR. 6). Deputy Whitlow was concerned that the Cadillac may have been stolen as there were no papers for the vehicle and Blume did not know the last name of the passenger, Dan, who was asleep in the front seat (TR. 6). With Blume's assistance, the owner's manual was retrieved from the glove compartment and Deputy Whitlow wrote down the VIN from front dash plate (TR. 36-37). The VIN was radioed into dispatch and came back clear (TR. 36). Deputy Whitlow completed the citation, provided it to Blume, and handed Blume's driver's license back to Blume (TR. 38). It is at this time that Sheriff Sutherland had arrived as Deputy Whitlow had previously called for back-up (TR. 38).

Deputy Whitlow then asked Blume if there were any drugs, money or guns in the car, and Blume said there were none (TR. 38). Deputy Whitlow asked Blume for consent to search the vehicle, and Blume said the Cadillac was not his vehicle, but he did not care if Deputy Whitlow searched the car (TR. 39; 41). Deputy Whitlow told Blume that as the driver Blume could consent to the search (TR. 41). Blume told Deputy Whitlow that he would consent to search Blume's stuff only (TR. 41). Deputy Whitlow provided a consent to search form to Blume for signing (TR. 9; Exhibit 1). Blume initially objected to signing the form but agreed to sign the form if there was an understanding that the consent was limited to Blume's stuff only (TR. 42). Deputy Whitlow agreed and stated he would try and get Dan's consent later (TR. 43).

2

Blume stated most of the items in the trunk were Blume's and offered to open the trunk for Deputy Whitlow (TR. 9-10). Deputy Whitlow found a box of .380 caliber ammunition and asked Blume where the gun was that went with the ammunition (TR. 10). Blume stated he did not know (TR. 10). Prior to conducting the search of the trunk, Deputy Whitlow had asked Blume if there were any firearms in the vehicle, and Blume stated there were none (TR. 10). Deputy Whitlow continued his search of the Cadillac by moving to the back seat (TR. 11). Blume had told Deputy Whitlow that Blume had property in the front and backseat and started to get some of the items out (TR. 45). Deputy Whitlow looked for himself and found a lot of clothing and miscellaneous items (TR. 11). Deputy Whitlow then moved to the front seat area on the driver's side (TR.11). As Deputy Whitlow was searching in the front passenger area, he was also attempting to arouse Dan, the passenger, by calling his name and patting Dan on the shoulder (TR. 12). Deputy Whitlow observed a green bag in Dan's lap (TR. 47). During the course of searching the front area, Deputy Whitlow observed a marihuana pipe and another box of .380 caliber ammunition laying on the seat among some CDs and other items in the middle of the seat (TR. 12; 16). Deputy Whitlow did not seize the pipe at that time but continued his search of the front area by walking around to the passenger side of the Cadillac and, again, attempted to awaken Dan (TR. 13). Deputy Whitlow shined his flashlight in Dan's face and Dan raised his head, looked at Deputy Whitlow, and said that it was unnecessary for Deputy Whitlow to do that (TR. 13). Deputy Whitlow told Dan that the vehicle was stopped for speeding and that Deputy Whitlow was trying to get some information on the vehicle (TR. 13-14). Dan told Deputy Whitlow that the vehicle was not his (Dan's) (TR. 14). Deputy Whitlow asked Dan whose vehicle it was, and Dan told Deputy Whitlow the vehicle belonged to "Eric" whose last name was mumbled (TR. 14). Deputy Whitlow asked Dan to repeat Eric's last name, but Dan would not (TR. 15).

While Deputy Whitlow was talking to Dan with the passenger door open, Deputy Whitlow noticed the green nylon bag which had been in Dan's lap was now wedged in between the doorpost and the back of the front seat (TR. 15). Deputy Whitlow, concerned that a gun may be in the bag, reached down and seized the bag (TR. 15). As he grabbed the bag, Deputy Whitlow felt a spoon and a syringe in the bag (TR. 15). Deputy Whitlow opened the

bag and observed a syringe with a clear fluid inside and spoon with white residue on it (TR. 17). There were also other syringes and a plastic baggie with white powder inside (TR. 18). Deputy Whitlow field tested the white powder and it tested positive for methamphetamine (TR. 18). At that point, Blume was placed under arrest, handcuffed, and placed inside a patrol vehicle (TR. 18). Deputy Whitlow, with the assistance of back-up officers, went to the passenger side of the Cadillac to arrest Dan (TR. 18). Dan stiffened his body in the seat and resisted being removed from the vehicle by the officers (TR. 20). Deputy Whitlow told Dan that methamphetamine was found in the car and Dan was being placed under arrest (TR. 20). Deputy Whitlow told Dan that he had to get out of the car and cooperate with the officers (TR. 20). At that point, Dan stepped out of the vehicle and was placed under arrest (TR. 20).

Blume and Dan were taken to the Chase County Jail for booking (TR. 20). Upon arrival, Dan was identified as Dan Rodgers by an officer of the Imperial Police Department who recognized Rodgers from an accident the pervious evening (TR. 21). During booking, Rodgers told the officers that he was not going to talk with them at all and wanted to have an attorney (TR. 21). As Rodgers' pockets were being emptied prior to him being placed in a cell for the night, Rodgers told Deputy Whitlow that the officers should be offering him some help rather than arresting him (TR. 22). When Deputy Whitlow asked what help Rodgers needed, Rodgers said that he was a junkie (TR. 22). Deputy Whitlow asked if Rodgers was referring to methamphetamine, Rodgers said: "Yeah, I told you I'm a junkie." (TR. 22).

The Cadillac was impounded and a search of the Cadillac revealed a .380 Loricin automatic pistol underneath the passenger seat (TR. 23). It is this firearm that forms the gravamen of the charge in Count I of the Indictment. Later, the officers determined the Cadillac was purchased by Rodgers from an individual with the first name of Eric (TR. 24).

## LEGAL ANALYSIS

Rodgers asserts that the seizure and search of the green bag was without Rodger's consent or probable cause. Thus, Rodgers argues the arrest of Blume and Rodgers and the impoundment of the car were illegal. Accordingly, Rodgers asserts evidence of the subsequent discovery of the firearm should be suppressed.

In this case, Deputy Whitlow observed a traffic violation, i.e., speeding, and had a lawful basis to stop the Cadillac in which Rodgers was a passenger. ***United States v. $404,905.00 in U.S. Currency***, 182 F.3d 643, 646 (8th Cir. 1999) **citing** ***Pennsylvania v. Mimms***, 434 U.S. 106, 109 (1977). Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. ***$404,905.00,*** 182 F.3d at 647; **see also** ***United States v. Sokolow***, 490 U.S. 1, 7 (1989). Additionally, the police officer may inquire about the motorist's destination, purpose of the trip and whether the police officer may search the vehicle. ***$404,905.00,*** 182 F.3d at 647; ***U.S. v. Allegree,*** 175 F.3d 648, 650 (8th Cir. 1999). The police officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made the police officer regarding illegal drug use, and divergent information from the passengers. ***$404,905.00,*** 182 F.3d at 647; ***Allegree,*** 175 F.3d at 650-51.

Rodgers does not assert that the stop or detention by Deputy Whitlow was unlawful. Nor does Rodgers assert that Blume did not voluntarily consent to the search of the Cadillac as it pertained to Blume's belongings. Rodgers does assert that he did not consent to any search of his belongings, and the search of the green bag which led to his and Blume's arrest was unlawful. The government asserts that the search of the green bag was pursuant to Blume's consent (TR. 55-56). The hearing colloquy was as follows:

| | |
|---|---|
| Mr. Gross: | You gave him a blanket form to authorize the search of the entire car, didn't you? |
| Deputy Whitlow: | Yes, I did. |
| Mr. Gross: | And Blume said you couldn't search the entire car, you could only search his stuff, right? |
| Deputy Whitlow: | Yes. |
| Mr. Gross | Okay. And you – and he objected to signing the document except if there was an understanding between the two of you that |

|  |  |
|---|---|
|  | the consent was limited to his stuff only; isn't that true? |
| Deputy Whitlow: | Yes. |
| Mr. Gross: | And you agreed – |
| Deputy Whitlow: | Yes. |
| Mr. Gross: | -- that you'd search only his stuff – |
| Deputy Whitlow: | Yes, I did. |
| Mr. Gross: | – didn't you? In fact, you told Blume that that was fine, quote unquote, isn't that right? |
| Deputy Whitlow: | Yes. |
| Mr. Gross: | Okay. Then you told Blume you'd try to ask Dan for his consent, didn't you? |
| Deputy Whitlow: | Yes, I did. |

(TR. 42-43). "A suspect may of course delimit as he chooses the scope of the search to which he consents." ***United States v. Jimeno***, 500 U.S. 248, 250 (1991). The scope of a consensual search is measured by what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Id.* at 251. "The scope of a search is generally defined by its expressed object," but a person may limit the scope of a consensual search. *Id.* at 251-52. It is not reasonable for an officer to believe that the driver's consent to search is plenary when told items in a vehicle belong to a passenger. **See *United States v. Jaras***, 86 F.3d 383, 390 (5th Cir. 1996). The court finds Blume did voluntarily consent to the search of the Cadillac as it pertained to his belongings. Despite the general unlimited language in the consent to search form, Exhibit 1, it was clear from Deputy Whitlow's testimony that the Blume's consent to search was limited in scope to Blume's belongings. Accordingly, Deputy Whitlock had a limited consent to search the car and belongings to the extent of Blume's belongings only. However, the government's reliance upon a consensual search of the green bag (TR. 55-56) is misplaced. There was no consent by Rodgers to any search of his belongings.

The government's argument that a basis for the search arose when Deputy Whitlow had reasonable suspicion that the crime of auto theft or possession of a stolen vehicle was

being committed is also misplaced. By the time of the search, Deputy Whitlow had determined the VIN and make/model of the vehicle, albeit without any automobile registration documents, by locating the VIN on the dash plate and the owner's manual from the glove compartment. Deputy Whitlow radioed the information into his dispatch and was informed that the car was clear and there were no reports on the Cadillac. Deputy Whitlow admitted as such during his cross examination in that the matter was cleared before he issued the ticket to Blume. Any suspicion on the part of Deputy Whitlow that the car was stolen was unreasonable and does not serve as any basis for the search.

The issue in the case is what was the basis for Deputy Whitlow to open the green bag where the methamphetamine was found because that is the basis for the arrest of Blume and Rodgers and the subsequent discovery of the firearm under the seat of the Cadillac. Rodgers does not dispute that if it was lawful for Deputy Whitlock to look in the green bag, all subsequent actions of the police were lawful which led to the discovery of the firearm under the seat of the Cadillac.

Observations made during the consensual search of a vehicle may give the officers probable cause to believe that there is contraband in the vehicle, thus lawfully expanding the scope of search under the automobile exception to the warrant requirement. ***United States v. Ross***, 456 U.S. 798, 823 (1982); ***United States v. Alverez***, 235 F.3d 1086, 1089 (8th Cir. 2000). "The warrantless search of an automobile, predicated on consent, may be expanded beyond the scope of the consent when it yields a basis for a reasonable articulable suspicion that additional contraband may be found in parts of the car not included in the consent." ***Alverez***, 235 F.3d at 1089 (citation omitted); **see *United States v. Ross***, 456 U.S. 798, 823 (1982). Deputy Whitlow first observed the green bag in Rodgers' lap when the first looked into the Cadillac when he spoke with the driver Blume. (TR. 16; Exhibit 101). When the passenger side door was opened to ask Rodgers about a search and to finish the search of Blume's belongings, Deputy Whitlow observed the green bag laying by the door jamb and appeared to have been pushed between the seat and rear area of the car (TR. 16; Exhibit 101). Deputy Whitlow was also concerned about the presence of a firearm since a box of .380 ammunition was observed in the trunk and another box of the same ammunition was observed on the front

seat between where Rodgers and Blume were seated. Blume had denied the knowledge and presence of a firearm. Deputy Whitlow was also concerned that Rodgers was under the influence of drugs due to Rodgers' actions and demeanor (TR. 11). Deputy Whitlow also observed a marihuana pipe on the front seat. Deputy Whitlow picked up the green bag to check to see if a firearm was inside as a matter of officer safety. It was a reasonable action under all the circumstances while Deputy Whitlow was completing the search permitted by Blume's consent. Deputy Whitlow felt a syringe and spoon in the bag. There was no evidence to dispute this determination at the hearing. Palpating a syringe and spoon in a bag in a car with a passenger who was apparently under the influence of something and a marihuana pipe on the front seat gave Deputy Whitlow probable cause to believe a drug offense had been or was being committed and there was a basis to open the bag and look inside. Once done, the items were field tested and provided the probable cause for the arrest of Blume and Rodgers. The firearm was found during the search of the car following the arrest of the occupants.

Accordingly, Rodgers' motion to suppress is without merit and should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON** that Rodgers' motion to suppress (Filing No. 23) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely appeal or object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 6th day of May, 2005.

> BY THE COURT:
>
> s/Thomas D. Thalken
> United States Magistrate Judge